## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

SAMUEL J. SAELI,

                  Plaintiff,

-vs-

CHAUTAUQUA COUNTY, NY, et al.,

                  Defendants.

DECISION AND ORDER

19-CV-6674 CJS

*Pro se* Plaintiff Samuel J. Saeli ("Saeli" or "Plaintiff") brought this action against Defendants Chautauqua County, NY, the Chautauqua County Sheriff's Department, William Genther, James Steenburn, Thomas Gilmore, "K. Wielgasz," "Lieutenant Grupa," unknown employees of the Chautauqua County Jail, and an unknown "Chautauqua County Sheriff" (collectively, "Defendants") based on his alleged mistreatment while confined at the Chautauqua County Jail.  Summons and Compl., September 12, 2019, ECF 1-7.  Plaintiff brought these claims in the Supreme Court of the County of Chautauqua before Defendants removed the case to this Court based on 28 U.S.C. §§ 1331 and 1367.  Notice of Removal, Sept. 12, 2019, ECF 1.

Defendants then moved to dismiss the complaint (Mot. to Dismiss, October 28, 2019, ECF 6) and for a filing injunction against Plaintiff (Mot. for Filing Inj., Dec. 26, 2019, ECF 9).  After Plaintiff responded to the motion for a filing injunction, Defendants moved to strike this response based on Local Rule 7(b)(2)(B).

Mot. to Strike Resp. in Opp'n to Mot. for Filing Inj., Jan. 29, 2020, ECF 16. Before the Court now are Defendants' three motions.

For the reasons stated below, the Court grants Defendants' motion to dismiss, denies their motion to strike, and denies their motion for a filing injunction.

## BACKGROUND[1]

Factual History

Plaintiff's claims arise from his alleged mistreatment while he was an inmate at the Chautauqua County Jail. Summons and Compl. at 5. Plaintiff enumerates nine claims in his complaint ("Claim One" through "Claim Nine"), plus an additional unenumerated claim at the end of the complaint ("Claim Ten"). *See generally*, *id*.

In Claim One, Plaintiff alleges that Chautauqua County and Chautauqua County Jail implemented a new handcuffing policy designed to inflict pain on the handcuffed individual. *Id*. at 7. Plaintiff further alleges that he was handcuffed in this manner on September 12 and 24, 2016, causing nerve damage and other injuries. *Id*. Plaintiff also claims that unspecified correctional staff were improperly trained and supervised, presumably in connection with the handcuffing incidents. *Id*.

---

[1] The following facts are taken from Plaintiff's complaint. *See* Summons and Compl.. Plaintiff's use of paragraph and page numbering in this complaint is inconsistent. To avoid confusion while also referring to Plaintiff's allegations with precision, this Court will cite to specific allegations in the complaint by the page they appear on in ECF 1-7, which is the summons and complaint attached as Exhibit G to Defendants' Notice of Removal.

Claim Two includes similar allegations, but includes specific details regarding the handcuffing incident on September 24, 2016. *Id*. at 8–9. Plaintiff alleges that he sustained injuries after being pulled out of his shower and handcuffed using the aforementioned method. *Id*. at 8. Afterward, Plaintiff claims he was discouraged from complaining about the incident and threatened with retaliation. *Id*. at 9–10.

In Claim Three, Plaintiff alleges that on September 25, 2016, he was given inadequate medical care for the injuries purportedly sustained from the handcuffing incidents. *Id*. at 12. Plaintiff claims he was ultimately given proper medical care and moved to a better housing unit, but only after Defendants interfered with his attempts to contact the New York State Commission of Corrections about the incident. *Id*. at 12–13.

In Claim Four, Plaintiff alleges that Defendants' incident-reporting procedure is unconstitutional in its design because prisoners are not informed of their rights during the hearings, and the system is structured to incentivize levying fines on prisoners. *Id*. at 14–15. Plaintiff also claims that Chautauqua County Jail does not properly regulate the temperature inside the jail during the summer and winter months. *Id*. at 15. Lastly, Plaintiff claims he was placed in "Administrative Segregation" for a prolonged period and exposed to other hazardous conditions without explanation because he wrote to the Commission of Corrections. *Id*. at 16.

In Claim Five, Plaintiff alleges that throughout 2016 and 2017, he was exposed to several health hazards in retaliation for writing to the Commission of Corrections. *Id.* at 18. These hazards include being moved to a cell with no heat, being denied an extra blanket in this cell, being exposed to mold and rust in another cell, being denied medical treatment for his alleged nerve damage from the handcuffing incidents, and being given a deteriorated mattress. *Id.* at 18–20. Plaintiff also states that after speaking with investigators about the handcuffing incidents, he was moved to a warmer cell and given medical treatment. *Id.* at 19. Lastly, Plaintiff alleges that correctional staff told other inmates what Plaintiff's state criminal charges were in order to expose him to more altercations with other inmates. *Id.* at 20.

In Claim Six, Plaintiff alleges that in April of 2017, Defendants allowed another inmate to urinate on his cell door and floor, and made Plaintiff clean it up. *Id.* at 22–23.

In Claim Seven, Plaintiff alleges that, throughout his time in Chautauqua County Jail, correctional staff told inmates about the nature of his charges to purportedly increase his risk of getting into altercations with other inmates, in retaliation for his complaints about prisoner treatment. *Id.* at 25. Plaintiff claims that, on July 25, 2017, this resulted in an altercation with another inmate that was de-escalated before it became physical. *Id.*

In Claim Eight, Plaintiff alleges that one of his phone calls was recorded and was going to be used by the District Attorney's Office at his trial. *Id*. at 27. He claims this recording was made without any warning that jail calls may be recorded. *Id*.

In Claim Nine, Plaintiff alleges that, starting in August of 2016, Defendants refused to house him in a cell with an electrical outlet, preventing him from being able to use his BiPAP machine. *Id*. at 29. In order to use the machine, Plaintiff was required to unplug a communal television, which he claims exposed him to potential altercations with other inmates. *Id*. Plaintiff also claims wrongdoing regarding Defendants' temperature control of the jail, his injuries from the handcuffing incidents, and Defendants' failure to advise him of his "classification level." *Id*. at 30–31.

Lastly, Plaintiff alleges in Claim Ten that a correctional officer searched his cell and took pictures of legal correspondences between Plaintiff and the attorney representing him in his state criminal proceedings. *Id*. at 32. Plaintiff claims he was made aware of the correctional officer's acts "while at a scheduled court appearance," but does not allege if or how the material was used. *Id*.

<u>Procedural History</u>

Plaintiff initially filed the instant lawsuit in the Supreme Court of the County of Chautauqua on or about September 5, 2019. Notice of Removal, ¶ 1. However, relevant to the instant Motion to Dismiss, Plaintiff initiated an almost identical lawsuit in this Court on April 11, 2017 (the "2017 Lawsuit"). *See Saeli v.*

*Chautauqua County, NY et al.*, Case No. 17-cv-6221. Plaintiff also later filed a third substantially-similar complaint with this Court, which was consolidated into the 2017 Lawsuit and treated as an amended complaint. *See* Court Order Screening Pl.'s July 7, 2017 Compl., Oct. 18, 2017, ECF 6-5 at 14.

On October 18, 2017, this Court issued an Order screening the 2017 Lawsuit complaint. *Id.* This Court stated in the Order that several of the claims alleged in the 2017 Lawsuit were inadequately pleaded. First, this Court found that Plaintiff failed to state a claim based on the alleged deliberate indifference to his handcuff injuries and his use of the BiPAP machine. *Id.* at 6–8. Second, Plaintiff failed to state a claim based on the imposition of jail fines through Defendants' incident report procedures. *Id.* at 8. Third, Plaintiff failed to state a claim based on the conditions of his confinement, including his alleged exposure to mold and rust, extremely cold temperatures, urine from other inmates, inadequate sleeping mats, and prolonged confinement in administrative segregation. *Id.* at 8–10. Fourth, Plaintiff failed to state a claim based on Defendants' failure to protect him by announcing his charges to other inmates. *Id.* at 11–12. And fifth, Plaintiff failed to state a claim based on retaliation for any of his alleged complaints. *Id.* at 12–13. However, the Court allowed Plaintiff to amend his complaint to adequately allege all of these claims. *See id.* at 7–14. The Court also allowed Plaintiff's excessive force claims, based on the September 12 and 24, 2016 handcuffing incidents, to proceed to discovery. *Id.* at 6.

Pursuant to this order, Plaintiff filed a second amended complaint in the 2017 Lawsuit realleging the above-referenced claims, which this Court again screened. *See* Court Order Screening Pl.'s Nov. 22, 2017 Compl., ECF 6-6. This Court found that Plaintiff failed to adequately state the aforementioned claims, except the excessive force claim, in his second amended complaint. *See id.* at 1. The Court further found that Plaintiff failed to state a new claim based on the undisclosed recording of inmate phone calls. *Id.* at 7. Accordingly, these claims were dismissed *with prejudice*, and the excessive force claims were allowed to proceed to discovery. *Id.* at 1.

Finally, on June 30, 2020, this Court issued a decision on a summary judgment motion filed in the 2017 Lawsuit, seeking summary judgment against Plaintiff's remaining excessive force claim. *Saeli v. Chautauqua Cnty., N.Y.*, No. 17-CV-6221 (CJS), 2020 WL 3547049, at *1 (W.D.N.Y. June 30, 2020), *aff'd in part, vacated in part, remanded sub nom. Saeli v. Chautauqua Cnty.*, NY, 36 F.4th 445 (2d Cir. 2022). After remand from an appeal to the Second Circuit, Plaintiff's excessive force claims against Chautauqua County are the only remaining claims in the 2017 Lawsuit. *See Saeli*, NY, 36 F.4th at 461. The parties most recently jointly requested an extension of time to file briefing for a second summary judgment motion. *See* Case No. 17-cv-6221 ECF 93; ECF 97.

As stated above, after this Court's second screening order dismissing the majority of Plaintiff's claims with prejudice, but before the summary judgment motion and appeal, Plaintiff filed the instant lawsuit in state court. Notice of

Removal, ¶ 1.  After removal, Defendants have now 1) moved to dismiss Plaintiff's complaint in its entirety (ECF 6); 2) moved for a filing injunction against Plaintiff (ECF 9); and 3) moved to strike Plaintiff's response in opposition to the filing injunction (ECF 16).

## LEGAL STANDARDS

<u>Motion Under Fed. R. Civ. P. 12(b)(6)</u>

Defendants seek dismissal under Rule 12(b)(6).  The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555; *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by two working principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris*, 572 F.3d at 72 ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally.").

<u>Motion for Filing Injunction</u>

In considering whether to grant a filing injunction, a district court should consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's

> motive in pursuing the litigation, e.g., does the litigant have an
> objective good faith expectation of prevailing?; (3) whether the litigant
> is represented by counsel; (4) whether the litigant has caused needless
> expense to other parties or has posed an unnecessary burden on the
> courts and their personnel; and (5) whether other sanctions would be
> adequate to protect the courts and other parties.

*Duran v. Kiley*, 586 Fed. App'x. 598, 600 (2d Cir. 2013) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

## DISCUSSION

Defendants' Motion to Dismiss

All of Plaintiff's claims fail to state a cause of action and must be dismissed. Claims Three through Nine are barred by the doctrine of *res judicata* because they were adjudicated and dismissed with prejudice in the 2017 Lawsuit.[2]  Claims One and Two are barred by the prior pending action doctrine because, while they were not dismissed in the 2017 Lawsuit, nearly identical claims are still pending in that case.   Lastly, Claim Ten fails because the allegations do not implicate any constitutional rights violations.

---

[2] Throughout this Court's analysis, it refers to submissions in the related proceeding *Saeli v. Chautauqua County, NY et al.*, Case No. 17-cv-6221. The Court may take judicial notice this material on a motion to dismiss. *Ostreicher v. Lincoln Nat'l Life Ins. Co.*, No. 17CV6904NGGJO, 2019 WL 7194478, at *3 (E.D.N.Y. Dec. 26, 2019) (assessing defense of res judicata, noting that "[i]n deciding whether to grant a motion to dismiss, a court may take notice of public records, including court filings") (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).

*Plaintiff's Claims Three Through Nine*

Plaintiff has already asserted Claims Three through Nine in another action with this Court, where they were dismissed with prejudice.  Accordingly, they must be dismissed here under the doctrine of *res judicata*.[3]

"Under the doctrine of *res judicata* . . . [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action, and constitutes an absolute bar not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Austin v. Downs, Rachlin & Martin*, 270 F. App'x 52, 53 (2d Cir. 2008) (internal citation and quotations omitted).  Where a *pro se* plaintiff attempts to relitigate previously asserted causes of action, *res judicata* will bar his recycled claims.  *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (finding *pro se* plaintiff's "recycled claims" were barred by *res judicata*).  Dismissal under 28 U.S.C. § 1915(e)(2)(B) is a final judgment on the merits.  *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) (endorsing the "dismissal of an *in forma pauperis* complaint on the ground of *res judicata* where the plaintiff's prior complaint arising out of the same events, albeit raising a different legal theory, had been dismissed pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.").

---

[3] Because *res judicata* and collateral estoppel "are related but distinct doctrines," *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999), and *res judicata* provides sufficient grounds for dismissing Plaintiff's claims here, the Court does not reach Defendants' arguments regarding collateral estoppel.

Here, Claims Three through Nine are based on "issues that were or could have been raised in [the 2017 Lawsuit]," and were given a "final judgment on the merits." *Austin*, 270 F. App'x at 53 (citations omitted).  Claim Three is based on the alleged inadequate medical care for Plaintiff's injuries purportedly suffered in the handcuffing incident on September 25, 2016.  Summons and Compl. at 12.  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on inadequate medical treatment, including for damage sustained from the alleged handcuffing incidents.  Court Order Screening Pl.'s July 7, 2017 Compl., at 6–8.

Claim Four is based on Defendants' incident report procedures, Chautauqua County Jail's temperature regulation, and Plaintiff's placement in "Administrative Segregation."  Summons and Compl. at 14–16.  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on the incident report procedures and his conditions of confinement, specifically including the jail's temperature regulation and Plaintiff's placement in administrative segregation.  Court Order Screening Pl.'s July 7, 2017 Compl. at 8–10.

Claim Five is based on correctional staff allegedly telling other inmates about Plaintiff's charges and various health hazards Plaintiff was allegedly exposed to, including being moved to a cell with no heat, being denied an extra blanket in this cell, being exposed to mold and rust in another cell, being denied medical treatment for his alleged nerve damage from the handcuffing incidents, and being given a deteriorated mattress.  Summons and Compl. at 18–20.  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on the alleged conditions of his

confinement, specifically including the lack of heat in his cell, exposure to mold and rust, and deteriorated mattress, the allegations that correctional staff told other inmates about Plaintiff's charges, and the allegation that Plaintiff was denied medical treatment for injuries from the handcuffing incidents.   Court Order Screening Pl.'s July 7, 2017 Compl. at 6–10, 12.

Claim Six is based on the allegation that Defendants allowed another inmate to urinate on his cell door and floor.  Summons and Compl. at 22–23.  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on his alleged conditions of confinement, specifically including the purported urinating incident.  Court Order Screening Pl.'s July 7, 2017 Compl. at 8–10.

Claim Seven is based on the allegation that correctional staff told other inmates about the nature of Plaintiff's charges.  Summons and Compl. at 25.  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on allegations that correctional staff told other inmates about Plaintiff's charges.   Court Order Screening Pl.'s July 7, 2017 Compl. at 11.

Claim Eight is based on the allegation that Chautauqua County Jail was recording prisoner phone calls without any warning that calls may be recorded, and used one of these calls at Plaintiff's criminal trial.  Summons and Compl. at 27.  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on the alleged improper recording of prisoner phone calls, including the one used at his trial. Court Order Screening Pl.'s Nov. 22, 2017 Compl. at 7.

Claim Nine is based on Defendants' refusal to properly allow Plaintiff to use his BiPAP machine, improper temperature regulation of the jail, improper treatment for injuries purported sustained from the handcuffing incidents, and Defendants' failure to advise him of his classification level.  Summons and Compl. at 29–31.  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on his alleged denial of medical treatment, specifically noting his BiPAP and handcuffing injury claims, and the temperature regulation of the jail.  Court Order Screening Pl.'s July 7, 2017 Compl. at 6–10.[4]

Additionally, throughout Plaintiff's claims, he indicates that Defendants' various improper acts are attributable to a retaliatory intent.  *See generally*, Summons and Compl..  In the 2017 Lawsuit, this Court dismissed Plaintiff's claims based on retaliation for these various alleged improper actions.  Court Order Screening Pl.'s July 7, 2017 Compl. at 12–13.

All of these claims were later dismissed with prejudice after Plaintiff failed to adequately amend his complaint (besides the allegations referenced in Claim Eight, which were first addressed in the November 22, 2017 screening order but still dismissed with prejudice).  Court Order Screening Pl.'s Nov. 22, 2017 Compl. at 1, 7.

Therefore, all of Plaintiff's Claims Three through Nine were litigated in the 2017 Lawsuit, or at the very least, "could have been raised in that action," and were

---

[4] The amended complaint in Plaintiff's 2017 Lawsuit (Case No. 17-cv-6221 ECF 48) does not expressly include a claim relating to Defendants' alleged failure to inform Plaintiff of his classification level.  However, this claim clearly "could have been raised in that action," and therefore is still precluded under the doctrine of res judicata.  *Austin*, 270 F. App'x at 53.

subsequently given a "final judgment on the merits." *Austin*, 270 F. App'x at 53. Accordingly, these "recycled" claims are barred under the doctrine of res judicata and are dismissed. *See Salahuddin*, 992 F.2d at 449.

*Claims One and Two*

Claims One and Two were not dismissed during the 2017 Lawsuit, and are therefore not subject to preclusion via *res judicata*.  However, nearly identical claims were asserted in the 2017 Lawsuit, and are currently awaiting resolution. Accordingly, these claims are barred by the prior pending action doctrine.

Under the prior pending action doctrine, "[a] district court may stay or dismiss a suit that is duplicative of another federal court suit as part of its general power to administer its docket." *Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).  Exercise of this rule is discretionary. *Ziemba*, 167 F. App'x at 832.

Here, Plaintiff's Claims One and Two are identical to the excessive force claims asserted in the 2017 Lawsuit.  Claim One is based on allegations that the Chautauqua County Jail used a new handcuffing technique against Plaintiff on September 12 and 24, 2016, which caused permanent damage to Plaintiff's hand, back, and shoulder.  Summons and Compl. at 7.  Plaintiff also claims that unspecified Defendants involved in these alleged incidents were improperly trained and supervised. *Id*.  In the 2017 Lawsuit, this Court allowed excessive force claims based on the same September 12 and 24 incidents to proceed to discovery.  *See*

Court Order Screening Pl.'s July 7, 2017 Compl. at 4–5; Court Order Screening Pl.'s Nov. 22, 2017 Compl. at 5.[5]

Likewise, Claim Two is based on Plaintiff's alleged injuries and complaints stemming from the September 24 handcuffing incident. Summons and Compl. at 8–10. Again, this Court allowed all excessive force claims based on this specific handcuffing incident to proceed to discovery in the 2017 Lawsuit. *See* Court Order Screening Pl's July 7, 2017 Compl.at 4–5; Court Order Screening Pl.'s Nov. 22, 2017 Compl. at 5.

Therefore, excessive force claims nearly identical to Claim One and Claim Two are pending in the 2017 Lawsuit, and have already progressed through discovery, an initial set of summary judgment briefing, and an appeal. *See* Case No. 17-cv-6221 ECF 84; ECF 91. All the Defendants capable of being sued in this case are (or were, before being dismissed) included in the 2017 Lawsuit, and are (or were) represented by the same counsel as the instant lawsuit. *See generally*, Case No. 17-cv-6221. The case is currently awaiting a second round of summary judgment briefing. Case No. 17-cv-6221 ECF 93. Accordingly, it would be a clear waste of judicial and party resources to litigate these claims with the same parties

---

[5] A review of the 2017 Lawsuit's amended complaint (Case No. 17-cv-6221 ECF 48) does not appear to reveal an express claim based on the alleged failure to properly supervise and train correctional staff, which Plaintiff has asserted in a single sentence in this case's complaint. *See* Summons and Compl. at 7. However, in the 2017 Lawsuit, this Court allowed all claims "to the extent that [they are] based the implementation of an unduly painful handcuffing policy" to proceed to discovery. Court Order Screening Pl.'s Nov. 22, 2017 Compl. at 5. This encompasses Plaintiff's additional training and supervision-based claim.

from the beginning in this case.  Therefore, the Court exercises its discretion to dismiss Claims One and Two based on the prior pending 2017 Lawsuit.

*Claim Ten*

Claim Ten fails to establish a § 1983 claim because the alleged cell search and seizure of purportedly privileged communications to an attorney fail to establish a violation of any constitutional right.

An inmate does not have a reasonable expectation of privacy in their prison cell.  *Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) ("One of the incidents of confinement for a convict is the loss of privacy . . . .  We therefore hold that 'society is not prepared to recognize as legitimate any subjective expectation of privacy that a [convict] might have in his prison cell.'") (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)).  Accordingly, the search of a prison cell alone does not give rise to a Fourth Amendment-based § 1983 claim.  *Hudson*, 468 U.S. at 526.

Furthermore, seizing a prisoner's allegedly privileged communications only violates the Sixth Amendment when the seizure prejudices or "actually obstructs" the prisoner's access to counsel.  *Leniart v. Murphy*, No. 3:11CV01635 (SALM), 2016 WL 1273166, at *8 (D. Conn. Mar. 31, 2016) ("[T]he plaintiff must show more than the mere breach of the privilege to raise a viable constitutional claim.  'Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right.'  Here, there is no indication in the Complaint or in any of the materials submitted by the parties of how the alleged reading of plaintiff's legal materials actually obstructed his access to counsel and thus interfered with

his Sixth Amendment rights.") (citations omitted) (quoting *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985)); *see also Howell v. Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013) ("[S]tanding alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right."); *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981) ("[T]he attorney-client privilege constitutes an evidentiary privilege that is secured by state law, and not by the Constitution or laws of the United States.  As a creature of state law, the attorney-client privilege cannot be asserted as a basis for recovery under § 1983.") (citations omitted).[6]

Here, Plaintiff alleges in Claim Ten that, in May of 2018, a correctional officer searched his cell and went through Plaintiff's communications with his attorney in his state criminal proceedings.  Summons and Compl. at 32.  He further alleges that he became aware of this during a "scheduled court appearance" on May 29, 2018.  *Id.*  Even assuming that this claim was plausibly pleaded factually, which it is not, the allegation that the correctional officer searched his cell does not create any Fourth Amendment basis for a § 1983 claim.  *Hudson*, 468 U.S. at 526. Likewise, the allegation that the material taken was privileged does not

---

[6] While the Second Circuit has recognized that the attorney-client privilege protects certain prisoner-attorney communications kept while incarcerated, *see United States v. Defonte*, 441 F.3d 92, 95 (2d Cir. 2006), it has not held that the seizure of such communications creates its own independent cause of action under § 1983.  In *Defonte*, the Second Circuit merely found that the attorney-client privilege protected certain material that was the subject of a discovery dispute, not that the seizure of such material created a Sixth Amendment violation.  *See id.* (specifically noting that "the district court did not decide that there were compelling or overwhelming Sixth Amendment concerns involved in its decision, nor did those concerns play a role in our determination").  Accordingly, *Defonte* is consistent with the above-referenced circuit court rulings that the attorney-client privilege is a rule of evidence, not its own Sixth Amendment-based cause of action.

demonstrate and Sixth Amendment violation, since Plaintiff fails to allege any prejudice or actual obstruction to accessing his counsel. *Clutchette*, 770 F.2d at 1471; *Leniart*, 2016 WL 1273166, at *8. Instead, Plaintiff merely alleges that he became aware of the purported privilege violation at a "scheduled court appearance." Summons and Compl. at 32. Accordingly, even construing the allegations liberally in light of Plaintiff's *pro se* status, Claim Ten does not establish a cause of action and is dismissed.

Further, this claim is dismissed with prejudice because amending the claim would be futile. *Florence v. Studco Bldg. Sys. US, LLC*, No. 14-CV-6426 CJS, 2015 WL 2406114, at *3 (W.D.N.Y. May 20, 2015) (dismissing *pro se* complaint because "any attempt to replead would be futile") (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). The only possible prejudice Plaintiff could establish by amending his claim is some sort of inappropriate use of the allegedly privileged information in his state court criminal proceedings. However, doing so would be an improper collateral attack on Plaintiff's criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) ("[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."). Accordingly, either Plaintiff was prejudiced by the use of his allegedly privileged material in state court, in which case he is improperly seeking to invalidate those proceedings under *Heck*, or

he was not prejudiced by the use of the material, and has no Sixth Amendment claim. Either way, amending Claim Ten would be futile.

<u>Defendants' Motion for Filing Injunction</u>[7]

The Court will not issue a filing injunction against Plaintiff because it is unclear whether Plaintiff has been given adequate notice and opportunity to properly explain his duplicative filings. However, the Court is now placing Plaintiff on notice that it will strongly consider a filing injunction in the future if he files any further duplicative lawsuits, or makes any apparent attempt to avoid this Court's rulings by filing obvious federal claims in state court.

It is well settled that "[a] district court may, in its discretion, impose sanctions against litigants who abuse the judicial process." *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996). A plaintiff's status as a *pro se* litigant does not give him "an impenetrable shield [from the application of Fed. R. Civ. P. 11], for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *DePonceau v. Bush*, No. 04-CV-6240CJS(FE), 2004 WL 1574621, at *3 (W.D.N.Y. June 4, 2004) (internal quotations omitted). It is well-established that the federal courts "have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III

---

[7] Defendants have also moved to strike Plaintiff's opposition to their motion for a filing injunction based on his failure to respond within fourteen days, as required by Local Rule 7(b)(2)(B). Motion to Strike Resp. in Opp'n to Mot. for Filing Inj. ¶¶ 4–6. Considering Plaintiff's *pro se* status and purported issues with accessing material needed to respond in a timely manner, *see* Resp. in Opp'n to Mot. for Filing Inj., Jan. 23, 2020, ECF 15 at 11, this motion is denied.

functions." *In re McDonald*, 489 U.S. 180, 184 n. 8 (1989) (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984)); s*ee also Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") (internal quotations and citations omitted).   The Supreme Court and Second Circuit have made it clear that "a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

Courts may consider the following factors when determining whether to grant a filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.   Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir*, 792 F.2d at 24.   It is also "the unequivocal rule in this circuit . . . that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Iwachiw v. N.Y. State DMV*, 396 F.3d 525, 529 (2d Cir. 2005); *In re Mu-Hammad*, No. 17-MC-6008, 2017 WL 2799298, at *4 (W.D.N.Y. June 27, 2017); (issuing filing injunction where

the plaintiff was "in complete disregard of . . . the Court's prior warnings"); *Balkanli v. Brodie*, No. 18-CV-4178(AMD)(LB), 2018 WL 3862689, at *2 (E.D.N.Y. Aug. 14, 2018) (not issuing filing injunction for repeated frivolous suits because no warning was given before initiating the new suits).

Here, Plaintiff was given an opportunity to respond to Defendants' argument for a filing injunction.  *See* Resp. in Opp'n to Motion for Filing Inj.   However, Plaintiff notes obstacles that purportedly impacted his ability to effectively respond, including facility scheduling rules that prevented him from conducting his own research.  *Id.* at 11.  Accordingly, the Court notes Plaintiff may have been unable to effectively oppose this motion.   Considering Plaintiff's *pro se* status, the conditions inhibiting his ability to respond, and the "unequivocal rule" that litigants must be given notice and an opportunity to be heard before issuing a filing injunction,  the Court denies Defendants' motion for a filing an injunction.  *Iwachiw*, 396 F.3d at 529.

However, the Court notes that the above referenced factor test does appear to currently weigh in favor of granting a filing injunction.  Plaintiff has an extensive history of filing lawsuits, at least two of which were duplicative of each other.  *See* Mot. for Filing Inj. Exs. A and B, Dec. 26, 2019, ECF 9-2.  The fact that Plaintiff initially filed the instant claims in state court also signals a potential bad faith attempt to avoid this Court's previous rulings.   There is also no doubt Plaintiff's meritless claims have cost both judicial and party resources.   Considering these

factors, Plaintiff is put on notice that further duplicative or otherwise frivolous lawsuits will be met with a full filing injunction analysis.

## CONCLUSION

Consistent with the foregoing, it is hereby

ORDERED that Defendant's motion to dismiss [ECF No. 6] is granted; Defendants' motion to strike [ECF 16] is denied; and Defendants' motion for a filing injunction [ECF 9] is denied.  Plaintiff's claims are dismissed with prejudice, and the Clerk of the Court is directed to close this case.

SO ORDERED.

DATED:        February 1, 2022
              Rochester, New York

CHARLES J. SIRAGUSA
United States District Judge